UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DARYL KENNETH HENDERSON, JR.,

Plaintiff,

v.                                          CAUSE NO. 3:26-CV-468-CCB-SJF

TRIMBLE, TOTO, RON NEAL, DAWN
BUSS, ARVIN, FAVELA, SINGLETON,

Defendants.

OPINION AND ORDER

Daryl Kenneth Henderson, Jr., a prisoner without a lawyer, filed a complaint.

ECF 1. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if

the action is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief.

To proceed beyond the pleading stage, a complaint must contain sufficient factual

matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S.

89, 94 (2007).

Henderson is incarcerated at the Indiana State Prison (ISP). On February 15, 2026,

as well as some unspecified time "[b]efore" that day, he claims he told Sgt. Trimble he

"had problems and was going to need to be moved." ECF 1 at 11. She didn't assist him and instead told him to "just take it like a man & stop crying." *Id*. at 12. On February 15, 2026, he "got into it" with several other inmates and was "severely stabbed." *Id*. at 3. Sgt. Trimble, who was working the cellhouse at the time of the incident, eventually walked into the range and saw Henderson on the ground. "[A]fter some time," Sgt. Trimble called a signal for medical to assist. *Id*. at 4. Henderson was taken to medical where he was revived. Capt. Toto began questioning Henderson about what had happened, but due to his injury Henderson wasn't able to "fully communicate." *Id*. Capt. Toto became upset and warned Henderson that if he didn't provide an explanation, he would be sent to segregation. Henderson told Capt. Toto to "please calm down." *Id*. at 5. Capt. Toto then told Henderson that he was "going to tell all the other inmates that Plaintiff was telling on them." *Id*. Henderson responded by stating he was going to file a grievance about the matter. Capt. Toto told Henderson that if he did, "he would never be safe here at Indiana State Prison from any of his fellow Officers, and that Plaintiff's grievance would never get anywhere anyways because he runs this place." *Id*. Henderson was then sent to an outside hospital to be treated for his injuries. He was later moved to a trauma center in Indianapolis for surgery, where he remained for five days.

When he returned to ISP, he was initially placed in a special management cell (SMC). He describes this cell as having only a mattress. He wasn't given bedding, soap, or hygiene supplies. He was forced to eat with "dirty hands" three times a day. *Id*. at 6. To access running water in the cell, Henderson had to ask the officer working to "hit a

2

button," and the water would run in the cell "for just a few seconds." *Id*. at 7. Henderson claims the officer working would deny his requests for running water because Capt. Toto told all the officers "not to help Plaintiff with anything." *Id*.

Henderson requested to speak with someone in Internal Affairs (IA). He told them he didn't feel safe anywhere at ISP. He explained that the offenders he had gotten into the fight with had "cut on themselves to make it look like Plaintiff did it to them, trying to get Plaintiff moved." *Id*. The IA officer told Henderson he was going to get charged with assault for the February 15, 2026, incident rather than the other offenders. He was then taken to D-cellhouse, the segregation unit at ISP. The cell he was placed in had "feces and blood smeared on everything." *Id*. at 8. Henderson asked the officers to sanitize the cell, but they refused. He spent "over 2 weeks without being able to clean his cell." *Id*. at 9. During that time, he came into contact with another inmate's feces and blood, which was made worse by the fact that his stab wounds hadn't healed yet. He became "very sick" and started vomiting daily. *Id*. He also had cold sweats, stomach pain, and insomnia. He was denied his personal property, and he was told his tablet was lost. He wasn't able to use the phone or contact his family. During those first two weeks, he repeatedly asked Lt. Arvin, Sgt. Favela, and Ofc. Singleton, in person, for help, but they refused to assist him. Instead, they told him if he filed grievances about the situation, "they would make sure he got hurt here at ISP." *Id*. at 10. Henderson

3

claims he filed "several grievances,"[1] but none of them were answered. *Id.* at 11.

Henderson has sued Sgt. Trimble, Capt. Toto, Warden Ron Neal, Dept. Warden Dawn Buss, Lt. Arvin, Sgt. Favela, and Ofc. Singleton for monetary damages as well as injunctive relief in the form of a transfer to another facility.

Henderson claims all of the defendants have failed to protect him. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (internal quotation marks, brackets, and citations omitted). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific,

---

[1] He attaches one grievance, dated "2-30-26" (incorrect date in original) about the condition of the cell stating that he asked Lt. Arvin, Sgt. Favela, and Ofc. Singleton for cleaning supplies but they refused. ECF 1-1 at 3.

credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' [associated with mental health issues] does not necessarily correlate to a 'substantial risk'"). "[A] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

Here, Henderson alleges he told Sgt. Trimble on the day he got stabbed (and sometime "before" then) that he "had problems and was going to need to be moved." These vague allegations are insufficient to have put any of the defendants on notice of a substantial, credible, imminent, and specific threat to his safety. *See e.g., Gevas*, 798 F.3d

5

at 481; *see also Klebanowski*, 540 F.3d at 639–40 (neither general expressions of fear nor prior attacks are sufficient); *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content). Similarly, although Henderson claims Capt. Toto, Lt. Arvin, Sgt. Favela, and Ofc. Singleton told him he wouldn't be safe at ISP if he filed grievances against them, he doesn't allege he made anyone aware of any specific and identifiable threats/concerns. *See id.* As such, he hasn't stated any plausible failure to protect claims.

Henderson further believes he has been retaliated against by Sgt. Trimble, Capt. Toto, Lt. Arvin, Sgt. Favela, and Ofc. Singleton. Under the First Amendment, an inmate can't be punished for engaging in certain kinds of speech. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). While these basic elements remain the same whether the plaintiff is a prisoner or a non-prisoner, the details of each element may depend on the context. *Id.* In the prison context, written requests for interviews and/or grievances clearly constitute First Amendment protected activity. *Id.*; *see also Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) ("A prisoner has a First Amendment right to make grievances about conditions of confinement."). That said, "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance." *Clark v. Reed*, 772 Fed. Appx.

6

353, 355 (7th Cir. 2019) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (emphasis in original)). Additionally, not all actions alleged to be retaliatory are "actionable in and of themselves . . .." *Bridges*, 557 F.3d at 552. Rather, only "if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983." *Id*.

As to Capt. Toto, Henderson alleges he got into a verbal altercation with him on the day of his stabbing as he was being triaged by medical. Specifically: (1) Capt. Toto asked for an explanation as to what had happened; (2) Henderson allegedly couldn't respond due to his injuries;[2] (3) Capt. Toto became upset and told Henderson he was going to "tell all the other inmates that Plaintiff was telling on them;" (4) Henderson told Capt. Toto to "calm down" and subsequently threatened to file a grievance against him; and (5) Capt. Toto responded by warning Henderson that if he did so, he would "never be safe here at Indiana State Prison from any of his fellow Officers." According to Henderson, Capt. Toto then instructed all the other officers to refrain from helping him when he returned to ISP after being released from the hospital. Based on these facts, Henderson hasn't stated a plausible First Amendment retaliation claim because his threat to file a grievance against Capt. Toto on February 15, 2026, doesn't constitute

---

[2] Interestingly, Henderson admits he *was* able to tell Capt. Toto that he intended to file a grievance against him, so it's unclear why he wasn't able to respond to Capt. Toto's questions about the incident. *See, e.g., Watkins v. Kasper*, 599 F.3d 791, 799 (7th Cir. 2010) (an inmate's speech is only protected by the First Amendment if consistent with legitimate penological interests); *see also Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("[B]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected.").

a protected activity. *See Davenport v. Szczepanski*, 704 Fed. Appx. 602, 603 (7th Cir. 2017) (affirming dismissal of inmate's complaint and stating, "Although '[a] prisoner has a First Amendment right to make grievances about conditions of confinement,' *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010), merely *threatening* to file a grievance against someone is not protected activity. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009).") (emphasis in original)); *see also Drogosz v. Newkirk*, No. 3:22-CV-387-DRL-MGG, 2023 WL 2237756, at *3–6 (N.D. Ind. Feb. 23, 2023), *appeal dismissed,* No. 23-2335, 2023 WL 9062156 (7th Cir. Oct. 2, 2023) (collecting cases and finding, "[b]ased on the persuasive weight of six Seventh Circuit cases issued" since 2002 that touched on the matter, it was not error to dismiss inmate's First Amendment retaliation claim because his threat to sue was not protected).

Henderson also claims that in the first two weeks of being placed in D-cellhouse in the disciplinary unit, he repeatedly asked Lt. Arvin, Sgt. Favela, and Ofc. Singleton for help sanitizing his cell. They told him to stop asking and that, "*if* he put in grievances on them, they would make sure he got hurt here at ISP." (emphasis added). He doesn't state when this alleged conversation occurred, and, based on what the complaint does say, it can't be plausibly inferred that it occurred after he filed any grievances about the matter or that the defendants knew about any grievances he had filed when they allegedly made those comments.[3] Moreover, there is no indication

---

[3] Henderson claims he filed "several grievances," but he doesn't provide details about those grievances or when they were filed. He attaches only one related grievance to the complaint dated "2-30-26" (sic)—the same day he was brought to the segregation unit and discovered the blood and feces in the cell.

8

Henderson has been physically harmed since the original stabbing in A-cellhouse on February 15, 2026. Accordingly, it's not plausible to infer the filing of Henderson's grievance(s) motivated any of the defendants to take a retaliatory action against him. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.) (emphasis in original)); *see also Szymankiewicz v. Doying*, 187 Fed. Appx. 618, 622 (7th Cir. 2006) (noting that neither the "mere fact" that a prisoner was disciplined nor "unsupported speculation and conjecture about the defendants' motives" demonstrates First Amendment retaliation). Henderson hasn't stated any plausible First Amendment claims.

Last, Henderson complains about the condition of his cell(s). The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). An official can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

9

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Thomas*, 2 F.4th at 719–20 (internal quotation marks, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted).

"Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Allegations of vague "overall conditions" aren't sufficient. *Id.* Regarding state of mind, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent

10

evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615.

Upon Henderson's return to ISP after his hospital stay, he was placed in a special management cell (SMC). He had a mattress but no bedding, soap, or hygiene products. He claims he asked the officers working the SMC (he doesn't say whom) to turn the water on in his cell, but they refused citing to Capt. Toto's directive not to help Henderson with anything. Henderson doesn't state how long he remained in this SMC or how often he went without water in his cell. Nor does he allege that he was prevented from drinking or accessing water via another method. In any event, the Seventh Circuit has consistently held that a cell without a toilet or sink, on its own, doesn't violate the constitution. *Gills v. Hamilton*, 164 F.4th 640, 645–46 (7th Cir. 2026) (collecting cases). Moreover, he hasn't plausibly alleged any of the named defendants knew he lacked bedding and hygiene supplies yet disregarded a risk of harm to Henderson. *See Thomas*, 2 F.4th at 719–20. Accordingly, he hasn't stated any plausible claims regarding the SMC.

Henderson was then taken to D-cellhouse where he was placed in a cell "covered" in blood and feces, which caused him to become sick. Despite asking for assistance and for cleaning supplies, the cell wasn't cleaned for over two weeks. Additionally, he was denied access to a phone, visits with his family, and all of his property. Henderson claims he repeatedly asked Lt. Arvin, Sgt. Favela, and Ofc. Singleton for assistance every time they worked, but they refused to help. Instead, they told him they would make sure he "got hurt" if he didn't stop asking. Giving

Henderson the benefit of the inferences to which he is entitled at this stage, he has stated plausible Eighth Amendment deliberate indifference claims against these defendants. *See e.g., Taylor v. Riojas*, 592 U.S. 7, 7–8 (2020) (case reversed and remanded for further proceedings where prisoner was held in deplorable conditions with feces and raw sewage everywhere for "six full days"); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases and establishing a feces and blood covered cell was inhumane). Henderson has also sued Warden Neal and Deputy Warden Buss because they are responsible for keeping him safe. However, the fact that they generally oversee the prison doesn't state a claim, and Henderson hasn't alleged facts that would subject them to individual liability. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). There is no general respondeat superior liability under 42 U.S.C. § 1983, and "public employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 594, 596; *see also Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)). These supervisory defendants will be dismissed.

As a final matter, Henderson has filed a separate motion for preliminary injunction. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary

injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[4] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then

---

[4] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

"consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

In his motion, Henderson states:

> [A]ll the officers here at ISP are telling all of the gang members that I snitched and that I'm filing grievances on the officers and on inmates. All the officers are putting hits on my life to have me killed. All the officers in segregation are letting all the inmates throw feces & urine on me whenever I walk passed (sic) their cells. I even have inmates trying to spear me with knives every chance they get & the officers just sit back & let them. All day, all the gang members are telling me that their (sic) going to kill me here at ISP.

ECF 3 at 2. Henderson also alleges that the inmates who stabbed him on February 15, 2025, were recently found "not guilty" of their disciplinary charges, and they have been released back into the general population. Although Henderson is currently on the disciplinary unit in D-cellhouse and *not* in the general population, he claims those

14

inmates are using their cellphones "to contact all the gang members here in segregation trying to have me killed." *Id*. at 3. He asks the court to have him transferred to a new facility.

As set forth in detail above, Henderson's complaint doesn't state any plausible failure to protect claims. Nor does it plausibly allege he is currently in danger of being harmed—it asserts that Capt. Toto told him he wouldn't be safe from the officers at ISP if he filed a grievance against him (Henderson doesn't allege he actually filed such a grievance) and that Lt. Arvin, Sgt. Favela, and Ofc. Singleton generally warned him he would "g[e]t hurt" if he continued to complain about or grieve the unsanitary conditions.[5] What the complaint doesn't do is identify an ongoing "specific, credible, and imminent risk of serious harm." *Gevas*, 798 F.3d at 481 (7th Cir. 2015); *see also Klebanowski*, 540 F.3d at 639–40 (general requests for help, expressions of fear, and even prior attacks aren't sufficient). The new allegations Henderson provides in his motion for preliminary injunctive relief are troubling, but, they too, are overly generalized. Claims that "all the officers here at ISP" and "all of the gang members" either want him dead or are attempting to kill him are impermissibly vague and simply not plausible. And, while Henderson fears that the offenders who stabbed him on February 15, 2026,

---

[5] According to a grievance attached to the complaint, he was brought to the unsanitary cell in the segregation unit on "2-30-26." ECF 1-1 at 3 (incorrect date in original). Those conditions existed for "over 2 weeks" before he admits he was able to clean his cell. Thus, he hasn't plausibly alleged the unconstitutional conditions are ongoing or subject to additional grievances.

15

are trying to have him killed, he admits that they are not currently in the same area of the prison as he is.[6]

For these reasons, the court:

(1) **DENIES** the motion for preliminary injunction (ECF 3);

(2) **GRANTS** Daryl Kenneth Henderson, Jr., leave to proceed against Lt. Arvin, Sgt. Favela, and Ofc. Singleton in their individual capacities for compensatory and punitive damages for being deliberately indifferent to the conditions of his cell in the disciplinary segregation unit for over two weeks beginning in late February 2026 in violation of the Eighth Amendment;

(3) **DISMISSES** all other claims;

(4) **DISMISSES** Sgt. Trimble, Capt. Toto, Warden Ron Neal, and Dept. Warden Dawn Buss;

(5) **DIRECTS** the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lt. Arvin, Sgt. Favela, and Ofc. Singleton at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(6) **ORDERS** the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

---

[6] He claims they are somehow using cellphones to contact "all the gang members here in segregation," but he doesn't explain how he knows this or provide any details about the specific gang members in segregation who are allegedly trying to harm him.

(7) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), Lt. Arvin, Sgt. Favela, and Ofc.

Singleton to respond, as provided for in the Federal Rules of Civil Procedure and N.D.

Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to

proceed in this screening order.

SO ORDERED on April 17, 2026

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

17