UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DARYL KENNETH HENDERSON, JR.,

    Plaintiff,

        v.                              CAUSE NO. 3:26-CV-468-CCB-SJF

TRIMBLE, TOTO, RON NEAL, DAWN
BUSS, ARVIN, FAVELA, SINGLETON,

    Defendants.

## OPINION AND ORDER

Daryl Kenneth Henderson, Jr., a prisoner without a lawyer, filed a second motion for preliminary injunction. ECF 12. As relevant background information, the court screened his complaint and allowed him "leave to proceed against Lt. Arvin, Sgt. Favela, and Ofc. Singleton in their individual capacities for compensatory and punitive damages for being deliberately indifferent to the conditions of his cell in the disciplinary segregation unit for over two weeks beginning in late February 2026 in violation of the Eighth Amendment." ECF 5 at 16. All other claims were dismissed. *Id*. Additionally, the court reviewed his original motion for preliminary injunction (ECF 3) and denied it for the following reasons:

> As set forth in detail above, Henderson's complaint doesn't state any plausible failure to protect claims. Nor does it plausibly allege he is currently in danger of being harmed—it asserts that Capt. Toto told him he wouldn't be safe from the officers at ISP if he filed a grievance against him (Henderson doesn't allege he actually filed such a grievance) and that Lt. Arvin, Sgt. Favela, and Ofc. Singleton generally warned him he would "g[e]t hurt" if he continued to complain about or grieve the unsanitary

conditions.[1] What the complaint doesn't do is identify an ongoing "specific, credible, and imminent risk of serious harm." *Gevas*, 798 F.3d at 481 (7th Cir. 2015); *see also Klebanowski*, 540 F.3d at 639–40 (general requests for help, expressions of fear, and even prior attacks aren't sufficient). The new allegations Henderson provides in his motion for preliminary injunctive relief are troubling, but, they too, are overly generalized. Claims that "all the officers here at ISP" and "all of the gang members" either want him dead or are attempting to kill him are impermissibly vague and simply not plausible. And, while Henderson fears that the offenders who stabbed him on February 15, 2026, are trying to have him killed, he admits that they are not currently in the same area of the prison as he is.[2]

ECF 5 at 15–16.

In his new motion for preliminary injunctive relief, Henderson alleges the details of his case have been "put on the nexis Lexis, which is on every inmate's tablet for them to read." ECF 12 at 1. He claims the defendants "have been walking around yelling out my full name + my DOC # to all the inmates in the cellhouse that I'm in, D-cellhouse, the segregation unit" and telling them to read the lawsuit. *Id*. at 2. Henderson believes this has put his life in danger, and he claims he is "being threatened everyday by 'all' of the inmates around me in the cellhouse." *Id*. He says the defendants labeled him a "snitch" and told "'all' of the inmates" they want him dead. *Id*. at 3. He further claims the defendants warned him that he needs to be careful eating his food "because their

---

[1] According to a grievance attached to the complaint, he was brought to the unsanitary cell in the segregation unit on "2-30-26." ECF 1-1 at 3 (incorrect date in original). Those conditions existed for "over 2 weeks" before he admits he was able to clean his cell. Thus, he hasn't plausibly alleged the unconstitutional conditions are ongoing or subject to additional grievances.

[2] He claims they are somehow using cellphones to contact "all the gang members here in segregation," but he doesn't explain how he knows this or provide any details about the specific gang members in segregation who are allegedly trying to harm him.

2

(sic) going to poison me & get away with it." *Id*. He says he has reached out to the Warden "asking for help." *Id*. at 4. He again asks to be transferred to a new facility.

A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court need not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more

complete discovery and litigation." *Id.* at 792.[3] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

As set forth in detail in the court's screening order, Henderson's complaint doesn't state any plausible failure to protect claims, nor does it plausibly allege he is currently in danger of being harmed, so he wasn't granted leave to proceed on those

---

[3] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

allegations. *See generally* ECF 5. Accordingly, he has no chance of success on the merits of such a claim. *See Univ. of S. Ind.*, 43 F.4th at 791 (court need not analyze remaining elements because this step is "often decisive").

Even considering the new allegations in Henderson's motion, they don't provide a valid basis to issue a preliminary injunction. As in his previous motion, Henderson claims he is being threatened "everyday" by "all" of the inmates around him in the segregation unit. He suggests this is because his case details have been viewed by the other innates via LexisNexis, but he doesn't explain why a lawsuit against prison guards and prison officials would cause "all" the other inmates to want to harm him, nor does he suggest that he actually has been harmed since the original incident in February of 2026. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) ("A plaintiff must include adequate factual detail to lift his claims from mere speculative possibility to plausibility.") (citing *Ashcroft*, 556 U.S. at 678) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")).

Moreover, while Henderson states he has alerted the Warden about his fears, he doesn't elaborate on what information he provided to him or describe any particular incidents. *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) (complaint must normally identify a "specific, credible, and imminent risk of serious harm" and "identif[y] the prospective assailant"); *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008) (general requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action). Henderson alleges the defendant

officers have verbally threatened him—both by telling the other inmates he is a "snitch" and by warning him to watch out for poison in his food—but, again, he doesn't provide sufficient details about such incidents or allege any facts to plausibly suggest the alleged verbal threats—while certainly not to be condoned—have or will be transformed into acts that create an "imminent risk of serious harm" to Henderson. *Gevas*, 798 F.3d at 481; *see also Univ. of S. Ind.*, 43 F.4th at 791 (when assessing a motion for preliminary injunctive relief, the court doesn't need to "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor"); *Schillinger*, 954 F.3d at 994 (factual details must be sufficient to raise allegations from "mere speculative possibility to plausibility").

For these reasons, the court **DENIES** the second motion for preliminary injunction (ECF 12).

SO ORDERED on July 29, 2026.

　　　　　　　　　　　　　　　 /s/ *Cristal C. Brisco*  
　　　　　　　　　　　　　　　CRISTAL C. BRISCO, JUDGE  
　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT